IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Plaintiff,

v.

RICHARD J. KLEMIS,

Defendant.                                                    No. 11-30108-DRH

MEMORANMDUM and ORDER

HERNDON, District Judge:

Pending before the Court is defendant's January 19, 2015 motion in limine (Doc. 57). Defendant seeks to prohibit the government from introducing the following evidence at trial: (1) testimony from witnesses Lorenzo Wagner, Nancy Singleton, Garrett Libra and Ian Dorsey regarding any conversations they had with Tyler McKinney, a deceased heroin user, and (2) evidence that defendant distributed marijuana.[1] On January 21, 2015, the government filed its opposition to the motion (Doc. 59). Based on the following, the Court denies the motion.

First, the Court will address the admissibility of the hearsay evidence under Federal Rule 804(b)(3)(B). As to the testimony from witnesses whom had

---

[1] Defendant's motion in limine is in response to the government's January 8, 2015 notice of intent to introduce evidence under Rule 804(b)(3), "exceptions to the rule against hearsay" (Doc. 53) and to a January 13, 2015 letter the government sent to defense counsel (and provided a copy to the Court) indicating that the government intended to elicit testimony that defendant dealt both heroin and marijuana.

Page **1** of **10**

conversations with McKinney, defendant simply argues that the statements are not supported by sufficient corroborating circumstances indicating their trustworthiness in that they fail to describe the location where McKinney allegedly drove the defendant, how said purchases allegedly occurred and when said alleged purchases were made. The government responds that the testimony is relevant and statements clearly "expose the declarant … to criminal liability" and that there is sufficient corroboration to support the statements.

In its notice of intent to introduce evidence under Rule 804(b)(3), "exceptions to the rule against hearsay," the government states that it intends to call several witnesses who heard McKinney make statements that defendant had been supplying McKinney with heroin, and/or using McKinney to further defendant's heroin distribution activities. The government expects the following testimony from the following witnesses:

(1) Lorenzo Wagner will testify that a few weeks before McKinney died, McKinney told Wagner that "I drive Richard to St. Louis to buy heroin from his [defendant's] supplier" and that "I buy heroin from Richard."

(2) Nancy Singleton will testify she was McKinney's girlfriend and shortly before McKinney died, he told her "Richard is my regular heroin supplier," "I drive Richard to St. Louis to buy heroin and he gives me free heroin," and "I'm sorry I took your ring. I owe Richard money." Singleton will also testify once McKinney left her presence stating "I have to make a run for Richard." He also told her "Richard is an illegal immigrant from Great Britain. He lives in Belleville." These

statements were made the month prior to McKinney's death.

(3) Garrett Libra will testify that about three weeks before McKinney died, McKinney told Libra "I owe Richard between $400 and $500."

(4) Ian Dorcey will testify that a few weeks before McKinney died, Dorcey saw the defendant riding with McKinney in McKinney's car.  He will also testify that McKinney told him "the reason he [defendant] was in my car was because I've been driving him [defendant] to St. Louis."

Specifically, the government contends that the statements made by McKinney are admissions that McKinney was committing felony offenses under both state and federal criminal laws.  Further, the government contends that all of the statements are supported by corroborating circumstances which clearly indicate trustworthiness as Rule 804(b)(3)(B) requires.  As examples, the government submits the following:  (1) Nicole Feyerbend will testify that she saw defendant inject McKinney with heroin on four separate occasions; (2) Alexis Carmack will testify that she saw defendant inject McKinney with heroin on several occasions and that she was with McKinney and defendant when McKinney drove defendant to St. Louis to buy heroin.  In addition, the government maintains that four other witnesses, Amy Goldberg, Cynthia Shaw, Nicholas Ramage and Brian Foggy, are expected to testify that they also drove defendant to St. Louis around the same time McKinney told people that he was driving defendant to St. Louis.  Similarly, the government asserts that Christopher Gonzalez will testify that he heard defendant and McKinney talk about going to St. Louis to get heroin; that Gonzalez saw

defendant and McKinney leave together from Gonzalez's house in McKinney's car and that Gonzalez saw defendant and McKinney return to Gonzalez's house with heroin.

"For Rule 804(b)(3) to apply, the proponent of an inculpatory hearsay statement must show: (1) that the declarant is unavailable to testify at trial; (2) that the statement was against the declarant's penal interest when made; and (3) the corroborating circumstances clearly suggest that the statement is trustworthy." *United States v. Volpendesto*, 746 F.3d 273, 288 (7th Cir. 2014)(citing *United States v. Loggins*, 486 F.3d 977, 981 (7th Cir. 2007)). Based on the following all three requirements have been met.

Clearly, the first and second requirements are met: (1) McKinney is dead and (2) the statements made by McKinney are sufficiently inculpatory as they implicate McKinney in criminal conduct. *United States v. York,* 933 F.2d 1343, 1360 (7th Cir.1991), *over ruled on other grounds by Wilson v. Williams*, 182 F.3d 562 (7th Cir.1999) (en banc) (statements that demonstrate a declarant's inside knowledge of a crime count); *see also United States v. Shukri,* 207 F.3d 412, 416 (7th Cir. 2000)(statements that display the declarant's "intimate knowledge" of a crime are against the declarant's penal interest).

As for the third requirement, the Court finds based on the above expected testimony that there is substantial corroborating evidence to support the admission of McKinney's statements. First, the statements occurred within months or around the month of McKinney's death, February 2011. Second, four witnesses

will testify to similar activity/conduct as McKinney in that they also drove defendant to St. Louis to buy heroin around the same time McKinney drove defendant to St. Louis.  Third, at least two witnesses will testify that they saw defendant inject McKinney with heroin.  Lastly, multiple witnesses will testify that they bought heroin from defendant and that they saw defendant sell heroin to others.  Thus, the Court **DENIES** defendant's motion to exclude testimony from Lorenzo Wagner, Nancy Singleton, Garrett Libra and Ian Dorsey regarding any conversation they had with McKinney.

Next, defendant again simply argues that the allegations that defendant distributed marijuana are irrelevant to the charges on which he is being tried and that the prejudice which would occur to him by the introduction of evidence of alleged marijuana distribution would far outweigh any limited relevance it might have.  The government counters that it is not offering the testimony that defendant sold marijuana, and other drugs, for the forbidden inference that "once a drug dealer, always a drug dealer," or "once a marijuana dealer, likely a heroin dealer;" instead the government maintains that it is offering the testimony for another purpose such as opportunity, preparation and plan.  The government argues that the evidence is relevant to its theory that defendant used the sale of marijuana as a "marketing tool" for his heroin distribution operation.  Specifically, the government asserts that defendant sold marijuana in order to entice his teenage customers into a business relationship which would ultimately lead to the sale of heroin.  Further, the government argues that without evidence regarding

marijuana sales the jury would be left with a confusing and incomplete account of defendant's heroin trafficking.   The Court agrees with the government's reasoning.

Evidence that a criminal defendant committed other crimes, wrongs, or acts is not admissible to show that that the defendant has a propensity to act in a certain way and on a particular occasion did act in that way because of the propensity. Fed.R.Evid. 404(b)(1). However, evidence of prior acts may be admitted if it is offered for a range of other permitted purposes, such as to show a defendant's motive, plan, or opportunity on a particular occasion. Fed.R.Evid. 404(b)(2). Even if evidence of prior acts is found admissible as serving a permitted 404(b) purpose, it may still be excluded if it is substantially more prejudicial than probative. Fed.R.Evid. 404(b). Finally, no evidence is admissible unless it is relevant—that is, has a tendency to make a fact of consequence to determining the action more or less likely.  Fed.R.Evid. 401,  402.

In August 2014, the Seventh Circuit created a new, "straightforward rules-based approach" to determining the admissibility of prior bad acts. *United States v. Gomez,* 763 F.3d 845, 853 (7th Cir. 2014).  Gomez requires courts to look beyond merely the articulation of a plausible, non-propensity purpose (such as to show knowledge, intent or identity) before admitting other acts evidence, and determine whether the "chain of reasoning" that makes the evidence relevant relies on a propensity-based rationale.

In *Gomez*, the defendant was charged with conspiracy to distribute cocaine and related crimes.  After the government introduced "overwhelming" evidence

that linked incriminating telephone calls to Gomez's residence, Gomez argues that his brother-in-law, who lived at the same house, must have been the culprit. In response, the government sought to introduce evidence that a small quantity of cocaine was recovered from the pocket of a pair of pants found in Gomez's bedroom at the time of his arrest, which was twenty-six days after the alleged conspiracy had ended.

The district judge admitted the evidence for the purpose of proving Gomez's identity as one of the participants in the recorded phone calls. The Seventh Circuit reversed, concluding that the cocaine evidence was relevant to Gomez's identity only through a chain of reasoning that included a forbidden propensity inference. *Gomez*, 763 F.3d at 861. In other words, for the pants-pocket cocaine (described by the court as a "user quantity") to have any relevance at all, the finder of fact would have had to reason that because Gomez had possessed cocaine at some point, it was more likely he than his brother-in-law who was involved in the cocaine conspiracy.

Under the *Gomez* approach, the Court:

**(1)** Determines whether evidence is relevant pursuant to Rule 401 and 402. The proponent of the evidence must be able to show that the evidence is relevant not just on any theory, but why it is relevant when taken for the particular purpose for which it is offered. *See id.* at 855 ("The proponent of other-act evidence should address its relevance directly, without the straightjacket of an artificial checklist").

**(2)** Determines whether the purpose for which the evidence is being offered is permissible under 404(b). It is not sufficient for the proponent of the evidence "simply point to a purpose in the 'permitted' list and assert that the other-act evidence is relevant to it." *Id.*at 856. Rather, a court will ask whether "the evidence is relevant without relying on a propensity inference." *Id.* This means that the proponent of the evidence, or at least the court, must be able to identify a "propensity-free chain of reasoning" by which the evidence can be deemed relevant. *Id.* (citing *U.S. v. Lee,* 724 F.3d 968, 978 (7th Cir.2013)).

**(3)** Determines whether the evidence is not substantially more prejudicial than probative. Thus, Rule 403 acts as a final check that excludes slightly probative evidence whose main effect will be the inflammation of the jury's passions rather than the illumination of their fact-finding. *See Gomez* at 845 (explaining that Rule 403 excludes "other-act evidence that may be slightly probative through a non-propensity theory but has a high likelihood of creating unfair prejudice by leading a jury to draw conclusions based on propensity").

    *Gomez* requires a proponent of other-act evidence first to lay out *in detail* the inferential chain by which offered evidence makes a material fact more or less likely; next, to show that this chain of inference does not necessarily entail a forbidden propensity inference; and finally, to argue persuasively that this chain of inference does not have a "high likelihood" of nonetheless eliciting forbidden inferences that the evidence could also support. A detailed enumeration of the links

along the inferential chain is critical because "[s]potting a hidden propensity inference is not always easy." *Gomez,* 763 F.3d at 856. *See United States v. Miller,* 673 F.3d 688, 699 (7th Cir.2012) ("Had the court asked more specifically how the prior conviction tended to show intent eight years later, it would have recognized that it was dealing with propensity evidence all the way down"); *Lee,* 724 F.3d at 978 ("When one looks beyond the purposes for which the evidence is being offered and considers what inferences the jury is being asked to draw from that evidence, and by what chain of logic, it will sometimes become clear ... that despite the label, the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity to commit the charged offense").

      Here, the Court finds that evidence of defendant's distribution of marijuana and other illegal drugs are admissible under *Gomez* and Rule 404(b) evidence for the non-propensity purpose of demonstrating defendant's plan and opportunity to utilize that plan. The government's theory is that defendant sold marijuana in order to entice his teenage customers into a business relationship which would ultimately lead to the sale of heroin. The evidence is offered for the purpose of demonstrating that defendant had a plan to provide himself with a new business opportunity: to access the teenage drug market and to gain the teenagers trust via marijuana and then exploit their trust by selling them heroin. The government expects Libra to testify that defendant announced to a group at a party that "I can get you anything you want – heroin, marijuana, anything." Further, the government maintains that virtually all of its witnesses who bought heroin from defendant will testify that

defendant first offered them marijuana. This type of evidence is relevant to the charges at bar as the sale of both heroin and marijuana occurred simultaneously and tends to show defendant's motive, intent, preparation, plan and absence of mistake. Further, the Court finds that defendant will not suffer prejudice from the marijuana distribution evidence as the charges at bar are way more serious than selling personal use quantities of marijuana (this is not to infer that the Court does not consider selling marijuana harmless; it does). Additionally, the Court finds that the marijuana distribution evidence's probative value is not substantially outweighed by the risk of unfair prejudice to defendant under a Rule 403 balancing test. Thus, the Court denies defendant's motion to prohibit the government from introducing evidence that defendant distributed marijuana.

Accordingly, the Court **DENIES** defendant's motion in limine (Doc. 57).

**IT IS SO ORDERED.**

Signed this 22nd day of January, 2015.

Digitally signed by David R. Herndon
Date: 2015.01.22 14:22:51 -06'00'

**United States District Judge**