IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

Plaintiff,

v.

RICHARD J. KLEMIS,

Defendant.                                              No. 11-30108-DRH

MEMORANDUM and ORDER

HERNDON, District Judge:

Introduction and Background

Now before the Court is defendant's motion for new trial (Docs. 86 & 87). The government filed an opposition to the motion (Doc. 93). Based on the following, the Court **DENIES** the motion.

On February 4, 2015, a jury found Richard J. Klemis guilty on all nine counts contained in the superseding indictment (Docs. 80 & 81). The superseding indictment charged Klemis with: Count 1, conspiracy to distribute and possess with intent to distribute heroin in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 846; Count 2, distribution of a controlled substance, heroin, resulting in the death of Tyler P. McKinney in violation of Title 21, United States Code, Sections 841(a)(1) and

(b)(1)(C); Count 3, distribution of a controlled substance, heroin, to a person under age twenty-one, Tyler P. McKinney, in violation of Title 21, United States Code, Section 859; Count 4, distribution of a controlled substance, heroin, resulting in the serious bodily injury of Eric D. Schulze in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C); Count 5, use of a person under 18 years of age, N.L.R., in a drug operation in violation of Title 21, United States Code, Section 841(a)(1) and Title 21, United States Code, Section 861(a)(1) and (b); Count 6, distribution of a controlled substance, heroin, to a person under age twenty-one, N.L.R., in violation of Title 21, United States Code, Section 859; Count 7, distribution of a controlled substance, heroin, to a person under age twenty-one, A.J.C., in violation of Title 21, United States Code, Section 859; Count 8, distribution of a controlled substance, heroin, to a person under age twenty-one, C.R.K., in violation of Title 21, United States Code, Section 859; and Count 9, possession of a controlled substance, heroin, in violation of Title 21, United States Code, Section 844(a) (Doc. 5).

## Applicable Law

A defendant can move for a new trial under Federal Rule of Criminal Procedure 33, and the Court may grant a new trial "if the interest of justice so requires." FED. R. CRIM. P. 33(a); see also *United States v. Smith*, 674 F.3d 722 (7th Cir. 2012); *United States v. McGee*, 408 F.3d 966, 979 (7th Cir. 2005). When defendant seeks a new trial because of an alleged trial error, the Court will grant a new trial if there is a "reasonable possibility that the error had a prejudicial

effect upon the jury's verdict," *see United States v. Van Eyl*, 468 F.3d 428, 436 (7th Cir. 2006), or if the error "jeopardized the defendant's substantial rights." *United States v. Reed*, 986 F.2d 191, 192 (7th Cir. 1993). Further, the court may grant a new trial if the jury's "verdict is 'so contrary to the weight of the evidence that a new trial is required in the interest of justice.' "*U.S. v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999) ("The focus in a motion for a new trial is not on whether the testimony is so incredible that it should have been excluded. Rather, the court considers whether the verdict is against the manifest weight of the evidence, taking into account the credibility of the witnesses."); *see also U.S. v. Chambers*, 642 F.3d 588, 592 (7th Cir. 2011). Put another way, "[t]he court should grant a motion for a new trial only if the evidence 'preponderate [s] heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.' " *U.S. v. Swan*, 486 F.3d 260, 266 (7th Cir. 2007) (quoting *U.S. v. Reed*, 875 F.2d 107, 113 (7th Cir.1989)). The Court is to grant these motions "sparingly," or "only in those really exceptional cases." *Reed*, 986 F.2d at 192. It is within the discretion of the trial court in a criminal prosecution to determine whether a new trial should be granted on the basis of newly discovered evidence. *Jarrett v. U.S.* 822 F.2d 1438 (7th Cir. 1987).

## Analysis

As to Special Verdict Form A contained in Count 2, Klemis argues, that while the government established that Tyler P. McKinney died as a result of the use of heroin, "there was simply no evidence introduced that the Defendant distributed

heroin to Tyler McKinney on the day that Tyler McKinney died or that the Defendant provided the heroin to Tyler McKinney that was ingested by Tyler McKinney causing his death." Defendant argues that there is no evidence that McKinney saw the Defendant on that date, that he met with Defendant on that date or that Defendant delivered heroin to McKinney on that date. The government counters that there is ample evidence to support the jury's verdict finding Klemis guilty of distributing the heroin which caused Tyler McKinney's death. The Court agrees with the government.

Based on the totality of evidence presented, the Court finds that the jury's verdict as to the Special Verdict Form A contained in Count 2 is not against the manifest weight of the evidence. A plethora of witnesses testified that Klemis was McKinney's heroin dealer. Two witnesses, Alexis Carmack and Nicole Feyerabend, testified that they saw Klemis inject McKinney with heroin during the weeks before McKinney's death. Carmack testified that she saw Klemis inject McKinney with heroin on several occasions and that the last time was "just a week or two" before McKinney died. Feyeraband testified that she saw Klemis inject McKinney with heroin inside her home in Belleville, Illinois. Further, other witnesses, including Matthew Cline, Donovan Henson, Eric Schulze and Brian Foggy testified that they saw Klemis sell heroin to McKinney. In addition, Nancy Singleton, Corey Keyes, Michael Jordan, Lorenzo Wagner, Mark Williams and Alexis Carmack testified that McKinney told them that Klemis was McKinney's heroin source. Moreover, Brian Frame, Crystal Martin, Nicole Feyerabend, Diney Rakowski, Corey Keys and Alexis

Carmack testified that Klemis told them that Klemis admitted to giving McKinney the heroin that killed McKinney. Finally, the government submitted a timeline chart as to McKinney and Klemis' actions and whereabouts on February 23, 2011. The chart shows: (1) the location of Klemis and McKinney; (2) the text messages between Klemis and McKinney as well as the text messages between McKinney and Nick Ramage; and (3) The time that phone calls were made between McKinney and Klemis, the time that phone calls were made between McKinney and Ramage. Exhibit 189 establishes: (1) McKinney texted Ramage that he was on his way to meet Klemis to pick something up; (2) Klemis told McKinney that he was on the way home and that McKinney should come over; (3) later McKinney texted Ramage that he picked up "a package;" and (4) about an hour and half after getting his package from Klemis, McKinney died of an overdose. Clearly, viewing the evidence in the light most favorable to the government, there is ample evidence that demonstrates Klemis provided McKinney with the heroin that caused McKinney's death. Further, the Court finds that it is *not* a miscarriage of justice to let the verdict stand.

As to the Special Verdict Form B contained in Count 4, Klemis argues that the evidence submitted by the government as to this count was equivocal at best. Defendant maintains that while Eric Schulze testified that the heroin he injected on or about September 30, 2010, was distributed to him by Klemis, there was also testimony that he told emergency personnel that the source for his heroin was in

Belleville.[1]  Further, defendant maintains that there was no testimony presented, besides Schulze, that established Klemis distributed heroin to Schulze on September 30, 2010, and there was no video, audio or other evidence introduced that such delivery occurred on September 30, 2010 or that the heroin injected by Schulze was distributed by Klemis.  The government counters that there was ample evidence to support the jury's verdict finding Klemis guilty of distributing the heroin which caused serious bodily injury to Schulze.  The Court agrees with the government.

As to the events of September 30, 2010, Schulze testified the following: That on September 30, 2010, he was dope sick from not having heroin so he called Klemis and then drove to Klemis' house in O'Fallon, Illinois on Kelly Street around 6:30 p.m. that evening.  Klemis lived with his mother and brother in the house on Kelly Street.  Schulze needed 1 point (1/10 of a gram) of heroin.  When he arrived at Klemis' house, Schulze called Klemis and told Klemis that he was there.  Klemis came out of the side entrance of the house.  Klemis handed him a corner of a sandwich bag that contained a point of heroin and Schulze paid him $25.00. Schulze put the point of heroin in a spoon, mixed it with water and shot it up in his arm in Klemis' driveway.  During this time, Klemis was in Schulze's truck.  After they talked for a few minutes, Klemis got out of the truck.  Schulze reversed his truck and passed out in Klemis' driveway.  The last thing Schulze remembers is the door opening and someone reaching in the truck looking for something.

---

1 The Court notes that the correct spelling of Eric's last name is "Schulze" and not "Schultz."

Also as to the events of September 30, 2010, Michael and Carrie Barrett, Klemis' neighbors, testified the following:  That on September 30, 2010, Schulze overdosed in his truck halfway in Kelmis' driveway and halfway in the road. Someone went to the Klemis' front door to get help.  Klemis and Richard's mother, Carol, came out of the house.  Klemis started slapping Schulze in the face, ran to the passenger side of the truck riffling through the door and removed something before the police and the ambulance arrived.  Prior to Schulze's overdose on November 30, 2010, the Barretts called the O'Fallon police about five times regarding all the traffic that was on their street.  As to this traffic, the Barretts saw cars pull up in front of Klemis' house, Klemis come out the side door of the house and meet the cars.  Sometimes Klemis would go back in the house and the cars would pull away and sometimes Klemis would leave in the cars.  The drivers and occupants of the cars were mostly teenagers.

Further, Brian Foggy testified that Klemis admitted to him that Klemis provided the heroin that caused Schulze's overdose.  Foggy testified that Klemis told him that Schulze came over; that Klemis he served him and "the stupid mother fucker overdosed."  Klemis told Foggy that Schulze overdosed halfway in the driveway and halfway in the street, that the neighbors thought that Schulze was dead, and that they knocked on the door for help.  Lastly, Amy Goldberg testified that she had seen Klemis sell heroin to Schulze on other occasions prior to the overdose in Klemis' driveway.

Clearly, there was considerable evidence to support and corroborate

Schulze's testimony as to the events of the September 30, 2010 overdose. Considering the credibility of the witnesses, the Court does not find that the verdict is against manifest weight of the evidence. Based on the totality of the circumstances, the Court finds there is plenty of evidence to support the jury verdict as to the Special Verdict Form B contained in Count 4 finding Klemis guilty of distributing the heroin which caused serious bodily injury to Eric Schulze.

## CONCLUSION

Accordingly, the Court **DENIES** defendant's motion for new trial (Doc. 86). The Court **REMINDS** the parties that this matter is set for sentencing on May 8, 2015 at 9:00 a.m.

**IT IS SO ORDERED**.

Digitally signed by
David R. Herndon
Date: 2015.04.11
15:46:46 -05'00'

**United States District Judge**