IN THE WESTMINSTER MAGISTRATES' COURT

THE GOVERNMENT OF THE UNITED STATES OF AMERICA

- V -

RICHARD KLEMIS

---

Ruling of District Judge Purdy dated 20/6/13. Extradition Act 2003.
Issue: S.87 (2) Article 3 ECHR – counts 2 & 4 minimum 20 year term (drug dealing) with 85% to be served – grossly disproportionate?

---

Advocates: Pros: M. Grandison
Def: Ms E. Stuart-Smith

## 1. Background.

Richard Klemis (d.o.b. 7/5/73) is a requested person for **trial** by a fully certified extradition request dated 9/1/12 per S.70 Extradition Act 2003 originally for 3 (drugs) offences followed by a further request dated 17/10/12 following a 9 count indictment of the United States District of Court for the Southern District of Illinois dated 9th May 2012. This superseding request was certified – per S.70 – by the Secretary of State on 18/10/12. The instant arrest warrant was therefore issued from this court by District Judge Evans on 16/11/12. Richard Klemis is serving a U.K. (domestic) sentence (8 years) with an anticipated earliest release dated of May 2015. Arrest and the initial hearing occurred on 8/1/13 being adjourned, all formalities otherwise in order and unchallenged, under S.76 B for 2 months. Given the request is for trial the U.S.A. seeks *"temporary surrender"* for that purpose, giving diplomatic assurances in a letter from the U.S. Embassy dated 14/11/12. Following *R (on the application of Edwards) v S. of S. for the Home Department* [2012] EWHC 1060 (Admin) the first set of proceeding have been, without challenge, terminated and replaced by the 9 count indictment. Richard Klemis was born in Northamptonshire, England U.K. on 7/5/73 and is a U.K. citizen (although with an American father) currently serving 8 years imprisonment (for class A drug supply) from the Crown Court at Northampton on 10/11/09. The conviction was *in absentia* as he was in the U.S.A., in breach of bail, he says seeking treatment for his drug addiction. His father is an American citizen, a G.I., and the family moved to the U.S.A., New Mexico, in 1988. During the time he was unlawfully at large from the U.K. the 9 drug offences now pursued led to his arrest in Illinois but not detention. On returning to the U.K., having heard via his partner's father, of the Northampton proceedings, he *"wanted to clear matters up and resume my relationship with my children"* – see proof dated 8/1/13. A period in a State Mental Hospital in Texas in 2009, due to *"drug induced psychosis"* (see proof

1

8/1/13) illustrates the level of addiction. He does not admit or deny the current charges but says *"I am very distressed at the prospect of serving a very long sentence in the U.S.A."* (proof 8/1/13) especially with his 4 year old son – being in the U.K. Richard Klemis has self evidently been in custody throughout these proceedings. Guilt/innocence is not for anything other than a trail court to determine.

## 2. Issue.

Ms Emma Stuart-Smith for the Defence pursues a single challenge per S.87 (2) and Article 3 ECHR. In essence she argues the **minimum sentence** for counts 2 & 4 being **20 years**, 85% of which must be served, is *"grossly disproportionate"* and therefore inhuman and degrading contrary to Article 3 ECHR.

## 3. Procedural Formalities.

The single challenge being so commendably clearly stated, Mr Miles Grandison for the U.S.A. invites me to resolve all other procedural formalities, without more, in favour of the U.S.A. I have considered them, all requirements are otherwise in order and unchallenged so I do indeed find in favour of the U.S.A.

## 4. Material Considered.

I have a full lever arch file as an agreed bundle. This contains *inter alia* the Request, temporary surrender assurances, opening note and skeleton argument from Mr Grandison, skeleton from Ms Stuart-Smith plus the proof of evidence already alluded to of Richard Klemis and a defence expert Joshua Dratel, a New York based attorney on federal sentencing jurisprudence and practice. A significant bundle of case law is also included. All has been considered between the full hearing before me on 22/5/13 and this ruling including, as always, most able, oral submissions by both learned counsel.

## 5. Live Evidence.

**Joshua Dratel** the New York based attorney gave live evidence via *Skype* from his office in N.Y.C. to this court on 22/5/13. Mr Grandison, very properly, accepted that this, absent the availability of a formal live link, was self evidently the easiest and most cost effective way of securing the consideration of this challenged evidence. No other evidence has been called live.

## 6. Charges.

The U.S. District Court for the Southern District of Illinois has a *"filed"* indictment against Richard Klemis dated 8/5/12 containing 9 counts. All relate to **heroin** offences between, as count 1 puts it, 3/8/10 – 3/3/11. All save counts 2 and 4 carry discretionary sentences. However, count 2 alleges 23/2/11 supplying heroin to *"Tyler P McKinney"* who *"died as a result of the use of the heroin"* contrary to Title 21 U.S. codes Section 841(a) (1) & (b) (1) (c). Count 4 alleges supplying heroin *"on or about"* 30/9/10 to *"Eric D. Schulze"* who *"sustained serious bodily injury as a result of the use of heroin"* in *"violation"* of the aforementioned penal provisions. All offences are alleged to have occurred in St Clair County, Southern District of

Illinois, U.S.A. The sentence is **fixed** at a <u>minimum</u> **20 years** if **death or serious bodily injury results**. Of this **85% must be served** before any form of release, conditional or otherwise, can be considered. The only lawful exception would be if **substantial assistance** is provided in the prosecution of another. Whether to offer and/or accept such substantial assistance is in the exclusive gift of the prosecution. Or possible *"compassionate release."* This much is common ground.

### 7. Evidence Joshua Dratel (live via Skype 22/5/13).

As indicated he operates from 2 Wall Street, N.Y.C. at the offices of *Dratel & Mysliwiec*, gaining a B.A. from Columbia College in 1978 and a J.D. from Harvard Law School in 1981. He has been in his current practice since 1996 dealing with *"all types of criminal and civil litigation in federal and N.Y.C.'s courts"*. He is a member of the N.Y.C., U.S. Supreme Court, U.S. District Courts for Southern, Eastern, Western and Northern Districts of New York and U.S. Courts of Appeals for the First, Second, Third, Fourth, Fifth and Eighth Circuits. Mr Grandison does not deny Mr Dratel is an able expert on *"sentencing jurisprudence"* in federal courts. As the procedures are *"uniform"* in all 52 Districts of the U.S.A. it should make *"no difference"* where sentence is passed. Counts 2 & 4 carry a <u>minimum 20 year term</u> which could be concurrent, consecutive or partially concurrent. The **U.S. Federal Sentencing Guidelines** have been *"advisory"* only since 2005 although 20 years would still be the minimum, it could be more. Once imposed **85% must be served** before *"consideration for release"* unless *"compassionate release"* is granted. However, he says this requires an application to the Warden of the relevant prison-and further higher authorisation if granted - with no *"time frame"* for a response. In his extensive experience *"a surprising number die waiting for a decision even for terminal patients... Klemis has no compelling circumstances"*. Some 50% in U.S. prisons are mentally ill and *"not released at all"*. He can find no case of compassionate release due to mental illness. Those granted *"usually terminally ill with less than a year to live depending on treatment schemes available"*. The only other possibility of any lesser term is for *"substantial assistance"* given to the prosecution. This requires a *"written agreement to cooperate"* with sentence delayed until post the trial of another(s) and revocable at will be the prosecution. Any deal is totally in the gift of the prosecution and *"close to unreviewable"* in the courts. In any event for *"Klemis I would say difficult to get a cooperation agreement at all as no real information he can provide"* which is likely to attract interest from the State prosecutor.

### 8. Evidence Robert Garrison.

This affidavit evidence dated 17/4/13 seeks to respond to that of Joshua Dratel. Robert Garrison is a graduate of Washington University School of Law 1977 and from 1991 works for the U.S. Department of Justice as an Assistant U.S. Attorney for the Southern District of Illinois. He agrees *"the sentencing judge must impose a sentence of 20 years for each of counts 2 and 4 upon conviction"* but *"the two 20 year sentences are not required to be consecutive"*. Further he accepts *"generally in the United States, individuals are required to serve at least 85% of the sentence imposed prior to being considered for release"*. On the topic of *"compassionate release"* he says there must be *"... extraordinary and compelling reasons to warrant a reduction or where the inmate is 70 years and other conditions are met"*. In his *"22 years*

*experience*" he says "*almost all mandatory minimum sentences... have been ordered to be served concurrently*" although they "*could*" be "*consecutive*".

### 9. Factual Findings on Custodial Term in U.S.A.

The expert evidence on U.S. federal sentencing for mandatory terms seems, in the instant case, to be effectively agreed. A minimum 20 years must be imposed on each of count 2 and 4 – following conviction – which could but is unlikely to be consecutive. 85% of that term must be served before consideration for release i.e. 17 years. Any "*cooperation agreement*" reducing that term is speculative in the extreme and on the alleged facts seemingly very unlikely indeed if not a total non starter. "*Compassionate release*" seems likewise to be a non starter on the instant facts. Consequently I must find that Richard Klemis upon conviction of counts 2 and/or 4 will receive a minimum 20 year term of which U.S. federal law will require him to serve at least 17 years.

### 10. Legal Challenge.

Ms Stuart-Smith taking the above position of fact argues such a term offends **Article 3 ECHR** being **"inhuman and degrading treatment"** because, she submits, it is "*grossly disproportionate*" to any comparable sentence for the same conduct in this or other jurisdictions. Thus, in her submission, I must discharge this request for non compatibility with Convention obligations per S.87 (2) Ex Act 2003. Ms Stuart-Smith argues the conduct is of a supply by a street dealer with no proof of foreseeability as to death/serious injury so not therefore manslaughter in English and Welsh law. Relying on *Harkins & Edwards v U.K.* [2012] 55 EHRR 19, ECtHR held @ para 133 "*gross disproportionality*" is the agreed test if there is a "*real risk*" of a violation of Article 3 ECHR – see *Ullah* [2004] 2 A.C. 323 @ 352 B. She agrees with Mr Grandison the Defence carry the burden of establishing incompatibility with Convention rights: *Aziz v S. of S.* [2003] EWCA civ 118. Counsel agree *R (Wellington) v S. of S.* [2009] 1 A.C. 355 is clear authority for asserting domestic law permits of such a conclusion -i.e. Article 3 breach- if per Lord Hoffman (@ para 35) the facts make a sentence "*clearly disproportionate*" but holding "*in extradition one is concerned with whether in this case the sentence would be grossly disproportionate. The fact that it ought to be grossly disproportionate in other cases is irrelevant*". The EctHR in *Harkin & Edwards v U.K.* [2012] 55 ECRR 19 review a range of foreign cases where "*grossly disproportionate*" sentences have been found to have been imposed and reviewed factors to be considered. As the Canadian case of *R. v Smith* [1987] 1 S.C.R. 1045 held (@ para 57) "*The effect of the sentence is often a composite of many factors and not limited to the quantum or duration of the sentence but includes its nature and the conditions under which it is implied*". An exact test is difficult especially in effectively seeking, as Ms Stuart-Smith does, a view from this jurisdiction onto another. As Baroness Hale said in *Wellington supra* (@ 53) it is not for this court to "*impose a particular philosophy of punishment upon other countries*" and Lord Carswell (@ 55) it is not "*for another state to be too ready to condemn that system without sufficiently strong reason*". *Harkins & Edwards supra* embraces the self same principle (@ 134) "*due regard must be had for the fact that sentencing practices vary greatly between states and that there will*

4

often be legitimate and reasonable differences... even for similar offences". Thus it will only be "very exceptional" to find "a non-contracting state would be grossly disproportionate and thus contrary to Article 3".

### 11. Defence Contention.

Ms Stuart-Smith cites some foreign authorities which have held mandatory minimum terms unconstitutional. She is clearly correct in saying this court must seek to make its own judgement relying on other cases to "furnish a frame of reference" per Gross LJ @ 61 in *Inzunza v U.S.A.* [2011] EWHC 920. She relies on *Smith v R* [1987] 1 SCR 1045 – Supreme Court of Canada rejecting a mandatory 7 year term for importing drugs as *some* cases would be grossly disproportionate and thus cruel and unusual punishment. Also the High Court of Namibia case of *State v Vries* (1997) 4 L.R.C.1 & *State v Likuwa* [2000] 1 L.R.C. 600 concerning mandatory minimum terms for theft and firearms offences. The high point of her skeleton "Taking account of the mandatory nature of the term and the clear disproportionality of the minimum term to the culpability of the offender, it is submitted that this sentence is such as would violate article 3 on its imposition". I am mindful of this jurisdiction's *Drugs Offences Definitive Guideline* for supplying Class A drugs "community order – 16 years".

### 12. Prosecution Position.

Mr Grandison acknowledges the broad nature of the principle set out in *Harkins & Edwards supra* but absence any, especially recent, cases actually upholding an Article 3 breach. Yes he says the principle is accepted but the instant facts cannot properly permit of a finding in favour of the Defence. I should add, in writing, Mr Grandison argued the Defence position is "premature" and should await conviction/sentence and the necessary return here – this being a temporary surrender case – before raising the current challenge. During oral submissions he "tempered" his position accepting S.87 (2) Ex Act 2003 requires consideration now of the real risk of a breach of Article 3 and does not permit me to leave that to representations to the Secretary of State, upon temporary return to the U.K., trying to avoid actual serving of the, by then, imposed sentence. He is right to withdraw that contention; I must consider the case on the factual basis found herein.

### 13. Conclusion.

This is one of those cases where the point of principle is easy to state and is agreed between the parties. *Potentially* 20 years is "grossly disproportionate". However, I have to ask is there a real risk here of 20 years being "grossly disproportionate" on the facts as set out i.e. a death and serious injury from heroin supplied by Richard Klemis accepting, for the sake of argument, no proven foreseeability and thus no manslaughter equivalent. I am clearly required to avoid direct sentencing comparisons with U.K. or any other jurisdiction. The jurisprudence is clear, different jurisdictions deal with common problems differently but not necessarily wrongly. A 17 year term to serve is undoubtedly a top end penalty almost anywhere. However, I cannot ignore that our English and Welsh law for supplying Class A drugs carries a

5

maximum of life imprisonment and the **Definitive Guidelines** range to 16 years which include selling to vulnerable persons and exposure to danger by selling drugs *"cut"* with *"harmful substances"* (page 14). Taking all points into account I am driven to conclude the penalty upon conviction is undoubtedly harsh, very harsh by U.K. standards, but I cannot go further and regard it as *"grossly disproportionate"* and must therefore reject the challenge advanced.

Accordingly I send this case to the Secretary of State pursuant to S.87(3) Ex Act 2003 with the Defence entitled to appeal my decision (S.103) so long as the appeal is lodged in proper form within 14 days; although the High Court will not consider any appeal unless/until the Secretary of State endorses my decision. Additionally she may seek assurances per S.119 Ex Act 2003 prior to any actual removal; such is a matter entirely for her.



6

Attachment #1